THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RALPH LAFAYETTE, Defendant-Appellee.

Third District    No. 81-99

Opinion filed September 10, 1981.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

The State appeals from the order of the Circuit Court of Kankakee County which suppressed evidence seized. The issue presented is whether a warrantless search of the defendant's (Ralph Lafayette) shoulder bag, made during booking procedures following a valid custodial arrest, was unreasonable and, thus violated the defendant's fourth and fourteenth amendment rights.

The defendant had been charged with possession of a controlled substance in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)). Prior to trial, he moved to suppress 10 amphetamine pills found in his purse-like shoulder bag subsequent to his arrest for disturbing the peace. The testimony adduced at the suppression hearing established the following facts:

On September 1, 1980, at approximately 10 p.m., Officer Maurice Mietzner responded to a call about a disturbance at the Town Cinema in Kankakee. When Mietzner arrived, the defendant was arguing with the theater manager. The manager said he wanted to sign a complaint against the defendant for disturbing the peace. According to Mietzner, the defendant continued to yell and scream in the theater, so the officer arrested him for disturbance of the peace. Although the defendant wore a shoulder bag, Mietzner did not remove it. Nor did he "pat down" the defendant for weapons or contraband. Instead, Mietzner handcuffed the defendant and transported him by car to the police station.

In the booking room, the handcuffs were released, and the defendant was ordered to remove any items from his pockets and place them on the counter. The defendant did as ordered. According to Mietzner's testimony, the defendant then reached into his shoulder bag, withdrew a package of cigarettes, and placed the bag on the counter where it was searched. The defendant testified that the police removed the bag from his shoulder and searched it. After "patting down" the bag, Mietzner looked inside a cigarette case package and found ten pills later identified as containing amphetamines. Mietzner stated he was not in fear for his safety when he made the arrest, nor did he expect to find a gun or drugs upon searching the shoulder bag. He searched the bag because "everything" had to be inventoried, according to standard police procedure. Mietzner also admitted the defendant's shoulder bag was small enough to be placed and sealed in a larger bag or box for protective purposes.

At the close of the hearing, the prosecution argued the seizure was made incident to a valid inventory search. After taking the matter under advisement, the circuit court summarily suppressed the evidence seized. On appeal, the State advances two grounds for justifying the warrantless search of the shoulder bag at the stationhouse following the defendant's arrest: the search was incident to a lawful custodial arrest, and the search constituted a valid inventorying of the defendant's personal effects upon his arrest. Neither party disputes the lawfulness of the defendant's custodial arrest for disturbance of the peace.

■■ With respect to the State's first argument, that the warrantless search was reasonable because it was incident to a valid custodial arrest, we find the State has waived this argument for the purposes of appeal by failing to raise it at the suppression hearing. (See *People v. Fuentes* (1980), 91 Ill.

App. 3d 71, 414 N.E.2d 876.) Moreover, even assuming, *arguendo*, that the State has not waived this argument, the stationhouse search of the shoulder bag did not constitute a valid search incident to a lawful arrest.

A search incident to arrest, if lawful at the time of the arrest, may be conducted later when the accused arrives at the place of detention. (*United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234.) However, the Supreme Court in *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, appeared to have limited the option of postponing a search incident to arrest by sanctioning only delayed searches of the accused and his clothing. In *Chadwick*, the court faced the issue of whether a locked footlocker found adjacent to the lawfully arrested defendants could be searched at the stationhouse without a warrant. The court rejected the government's argument that the *Edwards* rule applied equally to items within the accused's possession and declared that "warrantless searches of luggage or other properties seized at the time of the arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest' [(*Preston v. United States* (1964), 376 U.S. 364, 367, 11 L. Ed. 2d 777, 780, 84 S. Ct. 881, 884)], or no exigency exists." (*United States v. Chadwick* (1977), 433 U.S. 1, 15, 53 L. Ed. 2d 538, 550-51, 97 S. Ct. 2476, 2485.) The justification for the distinction announced in *Chadwick* is that, unlike an accused's person who suffers a substantial diminution in his expectations of privacy once placed under arrest (see *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467), possessions within the immediate control of the accused retain their expectations of privacy after arrest. Further, once the officers gain exclusive control of the luggage or personal property not immediately associated with the arrestee, there is no danger that the arrestee might gain access to the property to destroy evidence or to become armed. As Chief Justice Burger and Mr. Justice Powell indicated in their concurring opinion in *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586, the *Chadwick* rule applies equally to closed containers carried in the hand of the accused. Subsequent case law has demonstrated that the Chadwick rule does not depend on whether the container is locked, but whether, judging from the totality of the circumstances, the accused has a reasonable expectation of privacy. See, e.g., *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (unlocked suitcase); *Robbins v. California* (1981), ___ U.S. ___, 69 L. Ed. 2d 744, 101 S. Ct. 2841 (closed opaque plastic bag); *United States v. Rigales* (5th Cir. 1980), 630 F.2d 364 (closed backpack); and *United States v. Berry* (7th Cir. 1977), 560 F.2d 861 (unlocked briefcase).

■■ In applying these principles to the facts presented here, we find the postponed warrantless search of the defendant's shoulder bag to be unreasonable because the purse-like shoulder bag does carry an expec-

tation of privacy independent of that of the arrestee's body and clothing. Although we recognize several jurisdictions have held otherwise (see *United States v. Moreno* (9th Cir. 1978), 569 F.2d 1049; *Sumlin v. State* (1979), 266 Ark. 509, 587 S.W.2d 571; *Dawson v. State* (1978), 40 Md. App. 640, 395 A.2d 160; *State v. Horton* (1979), 44 N.C. App. 343, 260 S.E.2d 780), we agree with *People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364, which declared a warrantless search of the defendant's purse following his arrest to be unreasonable. After the accused has been secured, as in the case at bar, and the officer has no fear that the purse is a refuge for a weapon or other contraband, the contents of a closed purse, which are generally of a personal nature and subject to expectations of privacy, may not be searched and seized without exigent circumstances or warrant. Accordingly, because the shoulder bag was in the officer's exclusive possession and because no exigent circumstances existed, the search was not incident to the defendant's arrest.

The State also argues the warrantless search of the defendant's shoulder bag constituted a valid inventorying of its contents according to *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092. In *Opperman*, the court upheld the inventory search of the contents of an unlocked glove compartment in a lawfully impounded vehicle. Such an intrusion into the vehicle was deemed reasonable because it furthered three legitimate objectives: protection of the owner's property; protection of the police against claims of lost or stolen property; and protection of the police from potentially dangerous contraband. The reasonableness of the inventory search has not been considered by the Supreme Court outside of the circumstances found in *Opperman*. However, the Illinois Supreme Court in *People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346, refused to countenance an inventory search of an unlocked suitcase found in the defendant's possession at the time of his arrest and limited the *Opperman* holding to inventory searches of lawfully impounded vehicles. The *Bayles* court, after examining the legitimate objectives for upholding inventory searches offered in *Opperman* in light of the considerably greater privacy interests found in closed personal containers than in vehicles (see *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476), declared inventorying the contents of a suitcase found in a lawfully impounded vehicle to be, in the absence of exigent circumstances, unreasonable and a violation of the fourth amendment.

■■ ■ Clearly, the instant circumstances presented here are closer to *Bayles* than to *Opperman*. As we have previously said, the contents of the defendant's purse-like shoulder bag are vested with the same substantial privacy interests as are the contents of a locked trunk (*Chadwick*), an unlocked suitcase (*Sanders*), or a briefcase (*Bayles*). In considering the

reasonableness of an inventory search, this substantial privacy interest must be balanced against the three objectives stated in *Opperman*. First, we see no possibility of potential harm presented by the defendant's purse, for, as contended by Officer Mietzner, he had no fear for his safety at the time of the search. The two other objectives, preservation of the defendant's property and protection of police from claims of lost or stolen property, "could have been achieved in a less intrusive manner." (*People v. Bayles* (1980), 82 Ill. 2d 128, 143, 411 N.E.2d 1346, 1353.) For example, as Officer Mietzner testified, the defendant's shoulder bag could easily have been secured by sealing it within a plastic bag or box and placing it in a secured locker.

Therefore, the postponed warrantless search of the defendant's shoulder bag was neither incident to his lawful arrest nor a valid inventory of his belongings, and, thus, violated the fourth amendment.

Accordingly, we affirm the suppression order entered in the Circuit Court of Kankakee County.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.